Richard **PRYCE**, Petitioner,

v.

**UNITED STATES of America,**
Respondent.

Nos. 05 CR 224(CM), 06 CV 10212(CM).

United States District Court,
S.D. New York.

Dec. 14, 2006.

John M. Griffin, Tyco HealthCare Group, LP, Mansfield, MA, for Plaintiff.

## DECISION AND ORDER DENYING PETITION FOR HABEAS CORPUS

MCMAHON, District Judge.

Petitioner pleaded guilty, pursuant to a plea agreement with an appeal waiver clause, to immigration and weapon charges and was sentenced by this court to, principally, 180 months imprisonment. Because petitioner's sentence fell within the stipulated Guidelines range in the plea agreement, pursuant to that agreement, petitioner waived his right to appeal or otherwise attack his conviction and sentence and no appeal was taken. Notwithstanding that waiver, petitioner has filed a habeas petition, pursuant to Title 28, United States Code, Section 2255, claiming he received ineffective assistance of counsel and that, as a result, his sentence was excessive. For the reasons set forth in the Government's memorandum in opposition to the present motion and as stated below, the petition is dismissed.

### Procedural Background

Petitioner was charged in a five count indictment with: (1) illegal re-entry after deportation (in violation of Title 8, United States Code, Sections 1326(a) and (b)); (2) being a felon in possession of a firearm, namely, a .45 handgun (in violation of Title 18, United States Code, Section 922(g)(1)); (3) being a felon in possession of a firearm, namely, a 9mm handgun (in violation of Title 18, United States Code, Section 922(g)(1)); (4) with being an illegal alien in possession of a firearm, namely, the .45 handgun above (in violation of Title 18, United States Code, Section 922(g)(5)(A)); and being an illegal alien in possession of a firearm, namely, the 9mm handgun above (in violation of Title 18, United States Code, Section 922(g)(5)(A)). On June 29, 2005, the defendant, pursuant to a written Plea Agreement, pleaded guilty before Magistrate Judge Lisa Margaret Smith to

Count Three of the Indictment in satisfaction of all of the charges therein.

The plea agreement explained in explicit detail that the defendant was an Armed Career Criminal subject to the enhanced sentencing provisions of Title 18, United States Code, Section 924(3). It set forth the defendant's lengthy history of prior convictions; it set forth which of those numerous prior convictions were prior convictions for violent felony and/or serious drug offenses such that they qualified as prior convictions within the meaning of 18 U.S.C. § 924(e); and it set forth that the defendant was—consequently—facing a maximum statutory minimum sentence of 15 years' imprisonment and a statutory maximum of life imprisonment. Further, the Plea Agreement stated that the defendant's Sentencing Guidelines range was 15 years to 188 months and that the defendant was, by entering into the agreement, waiving his right to appeal or litigate under 18 U.S.C. § 2255 "any sentence within or below [that range]. (Govt. Memo Exhibit A)."

During the guilty plea hearing, at which the defendant was represented by privately retained counsel, John W. Mitchell, Esq., the Magistrate Judge asked questions and elicited answers which demonstrated that the defendant was competent to enter a guilty plea, that he knowingly waived his right to trial and the various rights attendant thereto, that his guilty plea was voluntary, and that there was a factual basis for the plea.

Further, during the guilty plea hearing, the defendant acknowledged that: (1) he had read the plea agreement before signing it, discussed it with his attorney, and understood it after reviewing it with Mr. Mitchell; (2) he had had a sufficient opportunity to consult with Mitchell about his case and about his decision to plead guilty; (3) he had told Mitchell everything he knew about his case; and (4) he was satisfied with the services that Mitchell had provided in this case. (Govt. Memo Exhibit B at 8–9).

Further, during the guilty plea hearing, the Government stated that it was "stipulated between the Government and the defense [that the defendant] falls within the parameters of 924(e), which is to say, he is an armed career criminal; which is to say he has three or more prior convictions for felonies, either serious drug offenses or violent felonies. Because of that, his statutory sentencing range is 15 years to life." (*Id.* at 11). The defendant was asked whether he understood that, and he replied that he did. (*Id.* at 12). The Magistrate Judge further informed the defendant that the Plea Agreement set forth a stipulated Sentencing Guidelines range of 15 years to 188 months, and the defendant acknowledged that he understood that. (*Id.* at 18). The defendant also acknowledged that by the terms of the Plea Agreement he was giving up any right "to appeal or otherwise attack the sentence of the Court" provided that the sentence was not higher than 188 months. (*Id.* at 20).

Finally, during the guilty plea hearing, the defendant acknowledged that he had previously been convicted in the State of Massachusetts of each of five discrete serious drug or violent felony offenses. (*Id.* at 28–29).

On September 22, 2005, Magistrate Judge Smith signed and caused to be filed with the Clerk of the Court her formal Report and Recommendations recommending acceptance of the defendant's guilty plea, and on September 28, 2005, this Court issued an Order adopting that report and its recommendations.

The Presentence Investigation Report prepared by the Probation Office ("PSR") detailed the defendant's prior convictions

(PSR §§ 32–60) and concluded that the defendant was an armed career criminal (*id.* § 61) facing a minimum term of imprisonment of 15 years/180 months (*id.* at § 80).

On September 27, 2005, the defendant was represented by Mr. Mitchell at sentencing. At the commencement of the sentencing proceeding, Mr. Mitchell acknowledged that he had reviewed the PSR and had gone over it with his client. (Govt. Memo. Exhibit C at 3–4). When the Court told Mitchell that it would hear him on sentencing, Mitchell replied that "we will rely on the terms of the plea agreement ... [a]nd as well as that, Your Honor, the statements that were set forth in the PSR." (*Id.* at 4). The Court then agreed with Mitchell and the Probation Office that the Sentencing Guidelines range was 180 months. (*Id.* at 5). The Court stated that the defendant was "being sentenced as an armed career criminal [and that] the record amply support[ed] the Probation Department's and this Court's conclusion that he qualifies as an armed career criminal" (*Id.* at 6–7). Thereafter, this Court imposed a sentence of 180 months of imprisonment (*i.e.,* fifteen years (the statutory minimum and the minimum/maximum provided by the Sentencing Guidelines)) (*id.* at 8) and a term of supervised release of five years (*id.* at 9). A $100 mandatory assessment was also imposed. (*Id.* at 13).

At the conclusion of the sentencing proceeding, the Court reviewed with the defendant the provision in the Plea Agreement whereby he waived his right to appeal a sentence of less than 188 months, and the defendant acknowledged that because the Court had imposed a sentence of 180 months he had waived his right to appeal the sentence. (*Id.* at 14). The Court's judgment was filed on October 4, 2005. The defendant filed no notice of appeal.

*The Petition*

The initial petition ("Pryce Pet.") was, apparently, signed by petitioner on October 2, 2006 and received by the Pro Se Clerk's office on October 5, 2006. It contained a rambling laundry list of conclusory claims including, amongst others, that he is "actually Innocent," that he received "Ineffective Assistance of Counsel," that there was a "Fundamental Due Process of law Violation of the Exclusion of Aliens," that he was "illegally seized and Illegally charged," that there was a "Jurisdiction Violation," that there was a "secret-perverse Abuse of Discretion and Abuse of Process by [the] Court," that there was "Abuse of Rights and Abuse of Writ Process by [the] Court," that the "Prosecutors Committed Acts of Malicious Prosecution," that there was "Malicious Wrongful process of law," that his counsel "Abandoned" him, that his "Constitutional and Civil Rights of Due Process of law and Equal Protection of the law [were] abandoned by Defense Counsel; [the] Court; and [the] United States Attorneys," that the "U.S. District Court Criminal Division lacked Jurisdiction," that "Immigration Court Fundamental Due Process of law right to freedom of speech and Habeas Corpus Rights and Exclusion Rights [were?] Illegally seized and Enhanced." (Pryce Pet. §§ 5, 11(d)).

By motion dated November 6, 2006 ("Pryce Motion"), the defendant purportedly seeks to amend his petition, acknowledging "that the previous grounds for relief in the habeas are inconsistent with law, and to say the least, frivolous at best." Accompanying this motion is a Memorandum of Law of even date ("Pryce Mem.") wherein the defendant "submits that the claim of ineffective assistance of counsel during the plea stage of the proceeding is

the only ground, that if litigated, would entitle him to relief, and [that] the grounds alleged in the previously filed habeas should be dismissed as moot." The motion is also accompanied by an Affidavit of Richard Pryce ("Pryce Aff.") wherein he avers, among other things, that he told Mr. Mitchell that he did not want to plead guilty and face a life sentence, that Mitchell advised him that he would secure a stipulation that "the maximum penalty imposed would be the 15 year minimum" and that Mitchell never advised him that the Government "had to file a notice of its intent to enhance my maximum penalty." (Pryce Aff. §§ 6–9). The defendant further avers that had he "known that the Government had to file an information of its intent to enhance [his] maximum penalty, [he] would not have waived his right to appeal the sentence or collaterally attack the sentence, as the sentence is now in error of law because no [prior felony] information was filed according to the Docket Sheet." (Id. § 10).

At this juncture the defendant's sole argument appears to be that Mr. Mitchell's representation of him was ineffective because, prior to the defendant's entry of his guilty plea, Mitchell supposedly failed to advise him that the Government was supposedly required to filed a "notice of its intent to seek the enhanced penalty as required by [§ 924(e) ]." Although in his initial petition the defendant sought to overturn his conviction and sentence, he now appears to be attacking only his sentence and only on the ground of Mitchell's claimed ineffectiveness.

### The Petition is Time Barred

■ The "amended" petition is barred by the AEDPA's one-year statute of limitations. See 28 U.S.C. § 2255, ¶ 6. The judgment of conviction in this case was filed on October 4, 2005 and became final on October 15, 2005 (the day after the defendant's time to appeal had expired). See Wims v. United States, 225 F.3d 186, 188 (2d Cir.2000). The "amended" petition, dated November 6, 2005, is thus untimely. While petitioner claims he has merely amended a timely filed petition and that such an amendment is contemplated by the rules governing § 2255 petitions, a review of the papers shows that the more recent submission presents an entirely new claim not raised in the initial petition. Thus, while the defendant raised ineffective assistance of counsel in amidst a blunderbuss of claims in his initial petition, the only fact set forth in support of that claim was that his attorney had supposedly "abandoned" him. The defendant, in his November 6 papers, abandons the abandonment claim, and alleges that his attorney was ineffective for entirely different reasons. In his own words, the defendant states that "the previous grounds for relief in the habeas are inconsistent with law, and to say the least, frivolous at best," (Pryce Motion at 1), and "the grounds alleged in the previously filed habeas should be dismissed as moot," (Pryce Mem. at 1). Thus, the defendant implicitly concedes that his "amended" claim is not an amended claim at all, but an entirely new claim, and as such it is barred by the statute of limitations.

### Ineffective Assistance

Even if petitioner's ineffective assistance claim were not time barred it would nonetheless be dismissed for lack of merit.

■ Petitioner claims that he receive ineffective assistance of counsel in connection with his plea of guilty. Specifically, he states that he would not have waived his right to appeal if his attorney had informed him that the Government was "required" to file an information of its intent to enhance his maximum penalty.

As a threshold matter, the Government contends that Pryce's plea waiver precludes the present § 2255 collateral attack. Indeed, the plain language of the plea agreement would seem to support the Government's position. Petitioner waived his right to attack any sentence within the stipulated Sentencing Guidelines Range of 15 years to 188 months when he executed the Plea Agreement; he acknowledged his awareness of that range when he pleaded guilty; and further acknowledged during the plea proceeding and at sentencing that he had no right to attack collaterally a sentence within the stipulated range.

Notwithstanding the plain language in the plea agreement, petitioner's narrow ineffective assistance claim is nonetheless justiciable because it goes to the validity of the plea agreement itself. *See Frederick v. Warden, Lewisburg Correctional Facility,* 308 F.3d 192, 193 (2d Cir.2002). That said, petitioner cannot meet his burden to show he received ineffective assistance of counsel.

Under *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to prevail on a claim of ineffective assistance of counsel, a defendant has the burden of showing both that 1) his counsel's performance was deficient (i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial," that counsel's "advice was not within the range of competence demanded of attorneys in criminal cases," that "counsel's representation fell below an objective standard of reasonableness" (internal quotations and citations omitted)) and 2) the deficient performance prejudiced the defendant in the sense that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose results are reliable."

Here, the defendant cannot meet either prong of the test set down in *Strickland.*

Initially, there has been no showing that Mr. Mitchell's representation was deficient in any respect. The defendant cites *United States v. LaBonte,* 520 U.S. 751, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997) for the proposition that because the Government "never filed a notice of its intent to seek the enhanced penalty as required by law ... the unenhanced maximum applies." Pryce Mem. at 4. He concludes that Mitchell's representation was ineffective because Mitchell supposedly never informed him of this. (Pryce Mem. at 3; Pryce Aff. § 9). Pryce's argument misses the mark.

In *dicta,* in a footnote in *LaBonte,* the Supreme Court stated:

We note that imposition of an enhanced penalty is not automatic. Such a penalty may not be imposed unless the Government files an information notifying the defendant in advance of trial (or prior to the acceptance of a plea) that it will rely on that defendant's prior convictions to seek a penalty enhancement. 21 U.S.C. § 851(a)(1).

The statute cited in *LaBonte* immediately above reads, in pertinent part, as follows:

No person who stands convicted of an offense *under this part* shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the Court (and serves such information on the person or counsel for the person) stating the previous convictions to be relied upon.

(Emphasis supplied). The "part" to which the statute adverts is Part D of Chapter 13 of Title 21, which deals with offenses and penalties related to narcotics possession and trafficking. By contrast, there is no provision in Chapter 44 of Title 18—which includes § 924(e)(the armed career crimi-

nal statute) and which deals with the illegal possession of and/or trafficking in illegal firearms—that requires a prior felony information to be filed in order for the enhanced penalty provisions of § 924(e) to apply. Moreover, the broad *dicta* in the *LaBonte* footnote notwithstanding, we have found no Second Circuit or other authority *holding* that a prior felony information must be filed by the Government in these circumstances. Congress knows how to legislate when and where a prior felony information must be filed, and its express inclusion of such a provision in Title 21, Chapter 13 and the absence of such a provision in Title 18, Chapter 44, suggests, if anything, that Congress did not intend to impose such a requirement in a case such as this. In the absence of an explicit statutory requirement or a case holding on point, it cannot be said that any failure of Mr. Mitchell to advise the defendant that there was a legal requirement that the Government file a prior felony information herein before the enhanced sentencing provisions of § 924(e) could apply amounted to representation which "fell below an objective standard of reasonableness."

Beyond that, petitioner cannot demonstrate that he was in any way prejudiced.

■ The purposes behind filing a prior felony information are to put the defendant on notice that he is subject to an enhanced sentence as a result of a prior conviction or convictions and to give him the opportunity to challenge whether he was in fact so convicted. There is no rule as to what form the information must take (indeed, as set forth above, there is no requirement that an information be filed in these circumstances at all). Here, the Plea Agreement itself provided all of the notice to which the defendant was entitled. It advised him that he was subject to the enhanced sentencing provisions of § 924(e) and advised him of the particular prior convictions on which the Government would be relying in seeking the enhanced statement.[1] As set forth above, the defendant signed the agreement and swore in open court that he had read it and reviewed it with his counsel before doing so. He also acknowledged at the time of his plea that he was facing a sentence of 15 years to life imprisonment, and acknowledged his prior convictions which resulted in that enhanced sentencing range. Moreover, at sentencing, the defendant posed no objection to the PSR, which listed those convictions and found the defendant to be an armed career offender under § 924(e). To the contrary, at sentencing, the defendant relied on the statements in the PSR which supported the finding that he was an armed career offender. (Exhibit C at 4).

Thus, the defendant's self-serving *ipse dixit* that had he "known that the Government had to file an information of its intent to enhance [his] maximum penalty, [he] would not have waived his right to appeal the sentence or collaterally attack the sentence," (Pryce Aff. § 10) is entirely belied by the record including, most notably, the defendant's own sworn testimony. Accordingly, the defendant cannot show that he was prejudiced by Mitchell's supposed "failure" to advise him of the "re-

---

1. The fact that the relevant information was contained in a letter agreement as opposed to a document with a formal case caption entitled "Information" is of no moment. Likewise, the fact that the Plea Agreement was provided to the Magistrate Judge in advance of the plea proceeding, and that it was or-dered to be marked as a court exhibit and held in the Government's custody instead of being filed with the Clerk of the Court is without legal import. To say that the defendant's rights turn on such niceties would truly be an elevation of form over substance.

quirement" that a prior felony information be filed.

Since "the motion and the files and records of the case conclusively show that [Pryce] is entitled to no relief," 28 U.S.C. § 2255, there is no need to hold an evidentiary hearing. *See United States v. Stantini*, 85 F.3d 9, 17 (2d Cir.1996).

The petition is dismissed

Petitioner has failed to make a substantial showing of a denial of a constitutional right. Accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; *see Lozada v. United States*, 107 F.3d 1011 (2d Cir.1997).

This constitutes the decision and order of the court.